**John A. Bennett**, OSB #750407
E-mail:    john.bennett@bullivant.com
BULLIVANT HOUSER BAILEY PC
One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351
Facsimile: 503.295.0915

**Nancy D. Adams** (*pro hac vice*)
E-mail:    nadams@mintz.com
**Alec Zadek** (*pro hac vice*)
E-mail:    azadek@mintz.com
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
AND POPEO, P.C.
One Financial Center
Boston, Massachusetts 02111
Telephone: 617.542.6000
Facsimile: 617.542.2241

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| AMERICAN ECONOMY INSURANCE COMPANY; AMERICAN FIRE and CASUALTY COMPANY; AMERICAN STATES INSURANCE COMPANY; and THE OHIO CASUALTY INSURANCE COMPANY, | Civil No.: 3:22-cv-00019-JR |
| Plaintiffs, | **PLAINTIFF INSURERS' OBJECTIONS TO MAGISTRATE JUDGE JOLIE A. RUSSO'S FINDINGS AND RECOMMENDATION** |
| v. | |
| WEST LINN FAMILY HEALTH CENTER, PC, | Oral Argument Requested |
| Defendant. | |

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**PLAINTIFF INSURERS' OBJECTIONS TO FINDINGS AND RECOMMENDATION
Page 1**

Pursuant to Federal Rule of Civil Procedure 72, Local Rule 73-3, and 28 U.S.C. § 636, the Plaintiff Insurers respectfully object to the Magistrate's Proposed Findings and Recommendations, dated July 18, 2022 (ECF 36) ("PF&R") holding that the Professional Services Exclusions are not applicable to the Underlying Lawsuits.

## PRELIMINARY STATEMENT

General liability insurance is intended to afford coverage for risks inherent in commercial business.  For this reason, general liability policies afford coverage for liability arising from the operation of a business.  Coverage for risks outside the operation of the business are insured elsewhere.  For example, a general liability policy does not afford coverage for injuries arising out of the ownership, maintenance or use of an automobile.  Coverage for such risks are found under a commercial automobile policy.  By way of further example, a general liability policy does not afford coverage for an employee's injuries while acting within the course and scope of her employment.  Coverage for such risks are found in a worker's compensation and employer's liability policy.  Relevant here, coverage for risks inherent in a "profession" are not found under a general liability policy. Instead, coverage for such risks are found under a professional liability policy or, specific to physicians, a medical malpractice policy.

For a medical doctor and physician's practice, such as Dr. Farley and West Linn, there are two primary risks: (1) those risks arising out of the operation of the business; and (2) those risks arising out of the practice of medicine.  In other words, there are commercial risks and professional risks.  This distinction is reflected in West Linn's insurance program. West Linn purchased a general liability insurance policy, which provided coverage for

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**PLAINTIFF INSURERS' OBJECTIONS TO FINDINGS AND RECOMMENDATION
Page 2**

commercial risks, and a professional liability insurance policy, which provided coverage for professional risks.[1]

Here, there can be no dispute that the Underlying Plaintiffs' claims against West Linn are professional risks rather than business risks. The Underlying Coe Plaintiffs allege that Dr. Farley exceeded the bounds of professional conduct while performing medical services on them: "[Dr.] Farley used the guise of medical care and treatment to normalize intimate, inappropriate, sexually abusive contact with the [Underlying Coe] Plaintiffs."[2] The "guise of medical care" provided the vehicle through which Dr. Farley was able to abuse the Underlying Plaintiffs for an extended period of time. Absent it, Dr. Farley would not have had access or opportunity to injure the Underlying Plaintiffs. Thus, the gravamen of the claims against West Linn is that Dr. Farley sexually abused the Underlying Plaintiffs in the course of performing medical treatment and services (*i.e.* professional services).[3]

To limit the scope of insurance to risks inherent in the commercial operations of the business and to avoid duplication with a professional liability policy,[4] the Policies contain

---

[1] *See* Intervenor Defendants' Underlying Coe Plaintiffs' Response to the Motion for Judgment on the Pleadings at p. 11 n.3, acknowledging that West Linn maintains professional liability coverage.

[2] Contrary to the Magistrate's suggestion, it is the Underlying Plaintiffs' themselves – and not the Plaintiff Insurers – who allege that Dr. Farley abused them under the "guise of medical care and treatment." *See* Complaint, *Jane Coe, et al. v. David Farley, M.D., et al.,* ¶¶ 40-379, No. 20CV37412 (Or. Cir. Ct. Aug. 3, 2021), attached as "Exhibit A" to the First Amended Complaint for Declaratory Judgment ("First Amended DJ Complaint").

[3] *Compare* PF&R at p. 10 *with* First Amended DJ Complaint Exhibit A at ¶ 24.

[4] The Magistrate found that the Plaintiff Insurers do not cite to any other terms or conditions that should be read in conjunction with the Professional Services Exclusions. To the contrary, the Plaintiff Insurers have consistently and repeatedly drawn a distinction between general liability policies and professional liability policies. *See* Plaintiffs' Motion for Judgment on the Pleadings Pursuant to Federal Rule of Civil Procedure 12(c) at p. 19; Plaintiffs' Omnibus Reply to the Oppositions of Plaintiffs' Motion for Judgment on the Pleadings Pursuant to Federal Rule of Civil

Bullivant|Houser|Bailey PC

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**PLAINTIFF INSURERS' OBJECTIONS TO FINDINGS AND RECOMMENDATION**
**Page 3**

Professional Services Exclusions that bar coverage for bodily injury "caused by" or "due to" "the rendering or failure to render any professional service" including "[m]edical, surgical, dental, x-ray or nursing services treatment, advice or instruction; [or] [a]ny health or therapeutic service treatment, advice or instruction."  *See* PF&R at p. 5.

Against this backdrop, the Magistrate found that the Professional Services Exclusions bar coverage for the Underlying Ewing Lawsuit because that lawsuit "sounds in medical negligence" by alleging that Dr. Farley failed to use a glove when inserting his finger into the plaintiff's vagina during PAP smears, which was "not appropriate medical care".[5]  Thus, according to the Magistrate, Underlying Plaintiff Ewing's alleged injury falls "within the scope of Dr. Farley's gynecological practice, even if such services were not rendered in accordance with the community standard of care."[6]  Although the Plaintiff Insurers agree that the Professional Services Exclusions bar coverage for Underlying Ewing Lawsuit, the exclusions do not apply because the Underlying Plaintiff Ewing's claims "sound in medical negligence".  Rather, the Professional Services Exclusions apply because the Underlying Ewing Plaintiff's alleged injuries were "caused by" or "due to" Dr. Farley's provision of medical services to her.

Although the Magistrate's reasoning was incorrect in the Underlying Ewing Lawsuit, the outcome was correct.  But, for the Underlying Coe Lawsuit, the Magistrate's error of law

---

Procedure Rule 12(c) at p. 11-12.  *See also Hoffman Constr. Co. v. Fred. S. James & Co.,* 313 Or. 464, 470 (1992) (holding that, when interpreting policy provisions, "interpretations are examined in light of, among other things, the particular context in which that term is used in the policy and the broader context of the policy as a whole").

[5] *See* PF&R at p. 13.

[6] *See id.*

Bullivant|Houser|Bailey PC

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**PLAINTIFF INSURERS' OBJECTIONS TO FINDINGS AND RECOMMENDATION
Page 4**

resulted in an incorrect outcome.[7]  When analyzing whether the Professional Services Exclusions bar coverage for the Underlying Coe Lawsuit, the Magistrate focused primarily on whether Dr. Farley's rendering of professional services was legitimate or medically necessary.[8]  As a result, the Magistrate essentially concluded that sexual assault cannot be a professional service.  In so doing, the Magistrate failed to give meaning to the causal component of the Professional Services Exclusions (*i.e.* whether the injury was "caused by" or "due to" the rendering of professional services), effectively holding that only claims "sounding in medical negligence" fall within the exclusions.  The applicability of the Professional Services Exclusions does *not* turn on whether the professional, here, Dr. Farley, was performing legitimate or medically necessary care and treatment.  Similarly, the applicability of the Professional Services Exclusions does *not* turn on whether the Underlying Coe Plaintiffs allege a cause of action for "improper medical treatment."[9]  The applicability of the Professional Services Exclusions turns on whether the Underlying Coe Plaintiffs allege "bodily injury" that was "caused by" or "due to" the provision of medical care and treatment by Dr. Farley.  As to this point, the Magistrate explained that:

> the alleged wrongdoing was the use of Dr. Farley's status as a trusted doctor to sexually abuse and subjugate female patients for his own sexual gratification by, amongst other things, performing unwarranted and ungloved breast and vaginal 'exams,' taking pictures of and filming patients during such 'exams' with his personal cellphone, and hugging and kissing patients immediately post-'exam' while they were in a state of

---

[7] But for the Magistrate's finding that the Sexual Molestation Exclusions barred coverage for the Underlying Elliott Lawsuit, the error of law would also have prejudiced the Plaintiff Insurers with respect to that lawsuit.

[8] *See* PF&R at p. 10.

[9] *Id.* at p. 12.

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**PLAINTIFF INSURERS' OBJECTIONS TO FINDINGS AND RECOMMENDATION**
**Page 5**

confusion and undress.

PF&R at p. 10.  In other words, in the guise of a trusted professional, Dr. Farley manipulated

the medical examinations to engage in sexual misconduct that was not easy to identify or

report.  These are precisely the type of allegations that fall within the Professional Services

Exclusions.

Separately, the Magistrate concluded that "many of the minor Coe Plaintiffs" allege

sexual abuse during, for example, routine "sports physicals".[10]  Pointing to expert testimony

in a separate and unrelated criminal case in Michigan, the Magistrate found that, during a

"sports physical", there is no reason examine female genitalia.[11]  This misses the point.

Whether (or not) the examination of female genitalia is medically necessary when

performing a "sports physical" is irrelevant; the Underlying Plaintiffs "believed that [Dr.]

Farley's conduct was medically necessary".[12]  Even if allegations of sexual abuse during the

course of "sports physicals" fall outside the Professional Services Exclusions, which the

Plaintiff Insurers dispute, only those policies implicated by the Underlying Coe Plaintiffs'

alleged injury during sports physicals would afford a defense to West Linn.

Accordingly, the Plaintiff Insurers object to the Magistrate's flawed analysis and

recommendation that the Professional Services Exclusions are inapplicable to the Underlying

Coe Lawsuit because the Underlying Coe Plaintiffs' alleged injuries are "due to" or "caused

---

[10] *See* PF&R at 9.  This argument was not made by West Linn or the Underlying Coe Plaintiffs in their oppositions.  In the absence of oral argument, this is the Plaintiff Insurers' first opportunity to respond to the Magistrate's argument.

[11] *Id.* at p. 9 n.3.

[12] *See* First Amended DJ Complaint Exhibit A at ¶¶ 45, 59, 137, 185, 209, 229, 283, 292, 319, 328.

Bullivant|Houser|Bailey PC

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**PLAINTIFF INSURERS' OBJECTIONS TO FINDINGS AND RECOMMENDATION
Page 6**

by" the rendering of professional services to them. As such, based upon the allegations in the Underlying Coe Lawsuit, the Plaintiff Insurers do not have a duty to defend or indemnify West Linn against the Underlying Coe Lawsuit. Separately, even if the Plaintiff Insurers have a duty to defend West Linn in the Underlying Coe Lawsuit based on certain individual plaintiffs' allegations, the duty to defend (and by extension, any potential duty to indemnify) only extends to the specific policies implicated by those allegations.

With respect to the applicability of the Sexual Abuse Exclusions, the Plaintiff Insurers concur that the exclusions bar coverage for the Underlying Lawsuits under the American Fire Primary Policies and the Ohio Casualty Umbrella Policies. Because Underlying Plaintiff Elliott and Underlying Plaintiff Ewing only allege injury that occurred after the inception of the American Fire Primary Policies and the Ohio Casualty Umbrella Policies, there is no duty to defend or indemnify West Linn against the Underlying Elliott Lawsuit or the Underlying Ewing Lawsuit. As such, for purposes of the Objection, the Plaintiff Insurers focus their argument on the applicability of the Professional Services Exclusions to the Underlying Coe Lawsuit. In the event the Court were to find that the Sexual Abuse Exclusions do not apply to the Underlying Elliott Lawsuit, then the Plaintiff Insurers' arguments with respect to the Underlying Coe Lawsuit would be equally applicable to the Underlying Elliott Lawsuit.

## STANDARD OF REVIEW

The Magistrate's Findings and Recommendations are reviewed *de novo.* Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1) (A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or

Bullivant|Houser|Bailey PC

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**PLAINTIFF INSURERS' OBJECTIONS TO FINDINGS AND RECOMMENDATION**
**Page 7**

recommendations to which objection is made.).  The Court may accept, reject, modify, receive further evidence, or return the matter to the Magistrate with instructions.  *Id.*

## OBJECTIONS

**I.    The Magistrate Erroneously Held that the Professional Services Exclusions Do Not <u>Apply to the Underlying Coe Lawsuit</u>.**

The PF&R is based on three interrelated premises.  First, sexual assault is not a professional service.  Second, medically unnecessary care and treatment is not a professional service.  Third, only allegations "sounding" in "medical negligence" constitute a professional service.  Separately, the Magistrate's decision erroneously presumed the purpose or motivation of Dr. Farley as being relevant to whether he was performing a professional service.  As discussed more fully below, each of the Magistrate's premises is erroneous.

### A.    The Plaintiff Insurers Do Not Contend That Sexual Assaults are a Professional <u>Service.</u>

The Plaintiff Insurers do not contend that sexual assault – in whatever form – is a professional service.  The Professional Services Exclusions bar coverage for the Underlying Coe Lawsuit because, according to the Underlying Coe Plaintiffs, Dr. Farley "used the guise of medical care and treatment to normalize intimate, inappropriate, and sexually abusive contact" with them.[13]  Thus, the Underlying Coe Plaintiffs' alleged injuries were "due to" or "caused by" the rendering of a professional service.

By concluding that the Professional Services Exclusions do not apply because sexual assault is not a professional service, the Magistrate failed to give meaning to the phrases "due to" and "caused by" in the exclusions.  Reading out the causal component inherent in the

---

[13] *See* First Amended DJ Complaint Exhibit A at ¶ 24.

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**PLAINTIFF INSURERS' OBJECTIONS TO FINDINGS AND RECOMMENDATION
Page 8**

terms "due to" and "caused by", the Magistrate erroneously narrowed the plain meaning of the Professional Services Exclusions to only bar coverage "for" professional services. *See, e.g., Hoffman Constr. Co. of Alaska v. Fred S. James & Co. of Or., 313 Or. 464 (1992)* ("We must assume that parties to an insurance contract do not create meaningless provisions" and interpret the policy "'so that no part of it is ignored and effect can be given to every word and phrase.'") (quoting *New Zealand Ins. v. Griffith Rubber,* 270 Or. 71 (1974)).

### B.    The Underlying Coe Plaintiffs Allege Misconduct During the Course of Medical Examinations.

The Underlying Coe Plaintiffs allege "bodily injury" that occurred during the course of Dr. Farley's medical care and treatment of them.  There is no dispute that the Underlying Coe Plaintiffs allege that Dr. Farley performed medical examinations on them.  In fact, each and every Underlying Coe Plaintiff expressly alleges that she was "***receiving medical treatment***"[14] from Dr. Farley.  Specifically, the Underlying Coe Plaintiffs allege that Dr. Farley performed at least the following medical services: IUD placements[15], pre-natal checks[16], PAP smears[17], membrane sweeps[18], and post-partum examinations.[19]  It was during

---

[14] *Id.* at ¶¶ 40, 46, 49, 52, 55, 58,63, 66, 69, 72, 75, 78, 81, 84, 84, 87, 90, 93, 96, 99, 102, 105, 108, 111, 114, 117,120, 123, 126, 129, 132, 135, 138, 141, 144, 147, 153, 156, 159, 162, 165, 168, 171, 174, 177, 180, 183, 186, 189, 192, 195, 198, 201, 204, 207, 209, 212, 215, 218, 221, 224, 227, 230, 233, 236, 242, 245, 248, 251, 254, 257, 260, 263, 266, 269, 272, 275, 278, 284, 287, 290, 293, 296, 299, 302, 308, 311, 314, 317, 320, 323, 326, 329, 332, 335, 338, 341, 344, 347, 350, 353, 359, 362, 365, 368, 371, 374, 377.

[15] *Id.* at ¶¶ 41, 53, 67, 91, 100, 112, 193, 210, 273, 294, 348, 360.

[16] *Id.* at ¶¶ 47, 80, 186.

[17] *Id.* at ¶ 47.

[18] *Id.* at ¶¶ 2(e), 47, 50, 53, 67, 73, 124, 160, 163, 178, 187, 205, 258, 297, 333, 339.

[19] *Id.* at ¶¶ 47, 50.

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**PLAINTIFF INSURERS' OBJECTIONS TO FINDINGS AND RECOMMENDATION
Page 9**

the course of providing these medical services that the Underlying Coe Plaintiffs allege that they were sexually abused.

The Magistrate's apparent conclusion that the Professional Services Exclusions only apply if Dr. Farley's actions were medically necessary is flawed for at least two reasons. First, even if the medical necessity of Dr. Farley's actions was relevant – which it is not – the Underlying Coe Plaintiffs expressly allege that they believed Dr. Farley's conduct was medically necessary. In fact, each of the Underlying Coe Plaintiffs alleges that: (i) she was a patient of Dr. Farley; and (ii) she reasonably believed that Dr. Farley's alleged misconduct conduct was medically necessary.[20] As such, contrary to the Magistrate's finding, it is **not** the Plaintiff Insurers asserting that Dr. Farley sexually assaulted the Underlying Coe Plaintiffs under the guise of providing gynecological and other medical services on sensitive areas of the body. Rather, it is the Underlying Coe Plaintiffs making such allegations.

Second, as a matter of law, the medical necessity of the offending actions has no bearing on the application of the Professional Services Exclusions. The application of the exclusion turns on the relationship between the alleged misconduct and the professional services being provided. In the cases relied on by the Magistrate, the alleged sexual abuse was entirely unrelated and unconnected to the professional service being provided. By way of example, in *Am. Med. Response Northwest, Inc. v. Ace Am. Ins. Co.*, the court held that an

---

[20] *Id.* at ¶¶ 42, 45, 48, 51, 54, 57, 59, 62, 65, 68, 71, 74, 77, 80, 83, 86, 89, 92, 95, 98, 101, 104, 107, 110, 113, 116, 119, 122, 125, 128, 131, 137, 140, 143, 146, 149, 152, 155, 158, 161, 164, 167, 170, 173, 176, 179, 182, 185, 188, 191, 194, 197, 200, 203, 206, 209, 211, 214, 217, 220, 223, 226, 229, 232, 235, 238, 241, 244, 247, 250, 253, 256, 259, 262, 265, 268, 271, 274, 277, 280, 283, 286, 289, 292, 295, 298, 301, 304, 307, 310, 313, 316, 319, 322, 325, 328, 331, 334, 337, 340, 343, 346, 349, 352, 355, 358, 361, 364, 367, 370, 373, 376, 379.

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**PLAINTIFF INSURERS' OBJECTIONS TO FINDINGS AND RECOMMENDATION
Page 10**

EMT's sexual assault of ambulance passengers did not result from the rendering of a professional service, because there was no connection between groping a passenger when the insured's duty is to transport the passenger to the hospital.  31 F. Supp. 3d 1087 (D. Or. 2014).  By way of further example, in *Hedmann v. Liberty Mut. Fire Ins. Co.*, the Oregon Court of Appeals held that an insured doctor's issuance of prescription drugs to a non-patient to maintain a sexual relationship with her was not barred by a professional services exclusion in a homeowner's policy.  158 Or. App. 510, 514 (1999).  Notably, in *Hedmann,* the court expressly noted that the claimant was not (and could not have been) a patient of the insured doctor because she was not a member of a healthcare plan for which the insured doctor was providing medical care.

Similarly, in *Cerrato v. Am. Home Ins. Co.,* 2001 WL 1911768, *1-2 (D. Conn. Apr. 2, 2001), a claimant asserted that a legal malpractice policy applied to satisfy a stipulated judgment against her former attorney, who allegedly sexually assaulted her while preparing her to testify in a criminal matter.  Although *Cerrato* is yet another example of a situation where there is no casual connection between the alleged misconduct and the professional services being provided, the court's reasoning in *Cerrato* provides further support for applicability of the Professional Services Exclusions to the Underlying Coe Lawsuit.  In *Cerrato,* the claimant argued that, based on the holding in *St. Paul Fire and Marine Ins. Co. v. Shernow,* 222 Conn. 823 (1992), her former attorney was afforded coverage for sexually assaulting her.  The *Cerrato* court thus examined the Connecticut Supreme Court's holding in *Shernow.*

In *Shernow,* a dentist administered an excessive amount of anesthesia to a patient and

Bullivant|Houser|Bailey PC

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**PLAINTIFF INSURERS' OBJECTIONS TO FINDINGS AND RECOMMENDATION**
**Page 11**

then sexually assaulted her.  When the patient showed signs of regaining consciousness, the dentist gave her more anesthesia and continued the assault.  The court determined that the dentist's professional liability policy afforded coverage for the patient's sexual assault claims because the dentist's breach of the standard of care with regard to the anesthesia was "inextricably intertwined and inseparable from the intentional conduct that serv[ed] as the basis for the separate claim of a sexual assault."  222 Conn. at 830.

Based on *Shernow,* the claimant in *Cerrato* argued that the "inextricably intertwined and inseparable" standard was met because her attorney assaulted her while preparing her to testify.  The court disagreed, explaining that unlike the dental patient in *Shernow,* the claimant's underlying allegations against her attorney were not "linked" to the provision of legal services.  "Nothing in *Shernow* suggests that the Court would have found coverage if the dentist, before administering nitrous oxide to the patient, went right ahead and assaulted her and the patient sued for assault alone."  2001 WL 1911768, at *2.

Likewise, the Supreme Court of North Dakota's decision in *St. Paul Fire & Marine Ins. Co. v. Engelmann*, 639 N.W.2d 192 (S.D. 2002), upon which the Magistrate relies, also supports applying the Professional Services Exclusions to the Underlying Coe Lawsuit.  In *Engelmann,* the court analyzed whether a general liability policy and a professional liability policy afforded coverage for a doctor's alleged insertion of his penis into patients during gynecological exams.  The court held that the general liability policy did not afford coverage because, among other reasons, the policy contained a professional services exclusion. *Engelmann,* 639 N.W.2d at 196.  The court explained:

> Under related circumstances, the Louisiana Supreme Court
> ruled that a comprehensive business liability insurance policy

Bullivant|Houser|Bailey PC

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**PLAINTIFF INSURERS' OBJECTIONS TO FINDINGS AND RECOMMENDATION**
**Page 12**

> excluding personal injury arising out of professional services furnished no coverage for medical malpractice.  Likewise, we conclude that St. Paul's commercial general liability policy provides no coverage for personal injuries from sexual assault or from rendering or failing to render professional services. Hence, medical malpractice, in any form, is not a covered occurrence.

*Id.* at 197.[21]  Presumably, the Magistrate's reliance on *Engelmann* related to the court's

holding that the claims against the doctor for rape and sexual exploitation were not covered

under his professional liability policy.[22]  While it is true that rape and sexual exploitation

were not covered under the professional liability policy, the court also held that the general

liability policy's professional services exclusion barred coverage for the doctor's alleged

sexual assaults of his patients.

Here, consistent with *Engelmann* and *Shernow,* but unlike *Am. Med. Response* and

*Hedmann,*[23] Dr. Farley's alleged misconduct is inseparable from his provision of medical

care and treatment to the Underlying Coe Plaintiffs.  The Magistrate fails to acknowledge the

---

[21] Analyzing *McCarthy v. Berman*, 668 So.2d 721, 725 (La. 1996).  In *McCarthy,* the Louisiana Supreme Court explained that professional liability exclusions are "generally found in comprehensive business liability policies, because coverage for such exposure is provided by special policies." *Id.* at 724.

[22] When analyzing the professional liability policy, the court expressly noted that "a doctor's penis in no way belongs in, much less intertwines with, a gynecological exam." *Id.* at 198.

[23] The PF&R also relies upon *Northfield Ins. Co. v. Derma Clinic, Inc.*, 440 F.3d 86 (2d Cir. 2006) and *David Lerner Assoc., Inc. v. Phila. Indem. Ins. Co.,* 934 F.Supp.2d 533 (E.D.N.Y.) *aff'd,* 542 Fed.Appx. 89 (2nd Cir. 2013).  Neither case is applicable.  First, in *Derma Clinic,* the Second Circuit Court of Appeals certified four questions to the Connecticut Supreme Court including whether the alleged sexual assault of a client during a massage constituted a professional service. The case was dismissed before the Connecticut Supreme Court answered the certified questions. Second, in *David Lerner Assoc.,* the issue was whether an insured's alleged failure to conduct due diligence on real estate investment trusts in connection with providing investment advice to customers in sale of shares of REITs constituted "professional services" under a directors and officers liability insurance policy.

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**PLAINTIFF INSURERS' OBJECTIONS TO FINDINGS AND RECOMMENDATION
Page 13**

inseparability and instead concludes that because "the *Coe* and *Elliot* Lawsuits expressly disavow the medical necessity of Dr. Farley's acts . . . they cannot fairly be characterized as 'rendering professional services.'"[24] But, medical necessity is not relevant to the application of the Professional Services Exclusions. As in *Shernow,* the Underlying Coe Plaintiffs allege tortious conduct during Dr. Farley's medical treatment of them that was inseparable from the professional services he provided. The Underlying Coe Plaintiffs' allegations are horrific, in part, because they allege Dr. Farley betrayed their trust by performing medical services in a manner that exceeded what was necessary, or reasonable, and ultimately constituted sexual abuse. In other words, the medical services that the Underlying Coe Plaintiffs sought from Dr. Farley and his alleged sexual misconduct are linked with one another. In such circumstances, courts routinely hold that the professional services exclusion bars coverage.[25] *See, e.g., Westfield Ins. Co. v. Matulis,* 421 F. Supp. 3d 331 (S.D. W. Va. 2019) (holding that a professional services exclusion barred coverage to a medical practice for a physician's sexual misconduct during a colonoscopy); *Nat'l Fire Ins. C. v. Lewis,* 898 F. Supp. 2d 1132 (D. Ariz. 2012) (a cardiologist's alleged inappropriate sexual touching of the breasts was "intertwined with and inseparable from" the provision of professional services); *Princeton*

---

[24] *See* PF&R at p. 10.

[25] In the PF&R, the Magistrate attempts to distinguish these decisions on the grounds that there is no relationship between the treatment the Underlying Coe Plaintiffs sought and the alleged "invasive and inappropriate 'examinations' of minor females…" PF&R, at pp. 10-11 n. 4. But this attempt is belied by the Underlying Coe Plaintiffs' own allegations. The Underlying Coe Plaintiffs expressly allege that many of them "were very young women, sexually inexperienced, and members of the conservative Mormon faith, who had never received any gynecological treatment before." First Amended DJ Complaint Exhibit A at ¶ 19. Similarly, each of the Underlying Coe Plaintiffs allege that, during the examinations, they believed that Dr. Farley's conduct was "medically necessary". *See supra* at p. 9 n.20.

*Ins. Co. v. Chunmuang,* 698 A.2d 9 (N.J. 1997) (holding that a doctor's misconduct during a gynecological examination resulted from the provision of professional services); *St. Paul Fire & Marine Ins. Co. v. Asbury,* 720 P.2d 540 (Ariz. Ct. App. 1986) (holding that a gynecologist who intentionally and improperly manipulated patients' genitalia during routine gynecological examinations was covered by his professional liability insurance because his conduct was "intertwined with and inseparable from the services provided").

### C.  Applicability of the Professional Services Exclusions Is Not Limited to Claims of Medical Malpractice.

In the PF&R, the Magistrate found that the Professional Services Exclusions bar coverage for the Underlying Ewing Lawsuit because, in that case, the plaintiff alleges claims sounding in "medical negligence."[26]  In contrast, the Magistrate found that, in the Underlying Coe Lawsuit, the plaintiffs allege claims that "sound, at least in part, in sexual assault, not medical treatment."[27]  In so finding, the Magistrate suggests that (i) only claims for medical malpractice fall within the Professional Services Exclusions; and (ii) a plaintiff's legal theory is determinative for purposes of coverage.  Neither suggestion is correct.

First, in *Multnomah County v. Oregon Auto Ins. Co.,* 256 Or. 24 (1970)*,* the Oregon Supreme Court rejected an argument that only claims for medical malpractice fall within a professional services exclusion.  As the court explained:

> The County also contends that the [professional services exclusion] is ambiguous and can be construed as being applicable only to a set of facts which involve a direct and immediate failure of a licensed physician to act or to act properly in relation to a patient.  In effect, the contention is that

---

[26] *See* PF&R at p. 13.

[27] *Id.* at p. 12.

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**PLAINTIFF INSURERS' OBJECTIONS TO FINDINGS AND RECOMMENDATION
Page 15**

> the exception contemplates only a set of facts which would
> substantiate an action of medical malpractice against a
> physician.  We cannot so construe it.  The language is plain and
> unambiguous.  It excepts from coverage the insured's failure to
> render a professional service.

256 Or. at 29.  Whether the Professional Services Exclusions bar coverage for the

Underlying Coe Plaintiffs' allegations does not turn on whether their claims "sound" in

sexual assault or medical negligence.  This inquiry instead turns on whether the Underlying

Coe Plaintiffs allege injury "due to" or "caused by" the provision of professional services.

Second, reliance on the labels or legal theories in a complaint is not sufficient to

determine the duty to defend.  Rather, it is the "conduct" alleged that is critical to the

determination.  *See L & D of Oregon, Inc. v. Am. States Ins. Co*., 171 Or. App. 17, 20 (2000)

(*citing Minnis v. Oregon Mut. Ins. Co*., 162 Or. App. 198, 209 (1999) ("The basis for

coverage is not necessarily limited to the legal theory with which the underlying plaintiff

labeled the claim.")).  As such, the fact that the Underlying Coe Plaintiffs do not allege

claims for medical malpractice or medical negligence does not mean that the Professional

Services Exclusions are not applicable to their claims.

### D.    Dr. Farley's Purpose and Motive Are Not Relevant to the Application of the <u>Professional Services Exclusions</u>.

The Magistrate erroneously deemed the purpose or motivation of Dr. Farley as being

relevant to whether Dr. Farley was performing a professional service.[28]  This error appears to

result from the unwarranted expansion of the Oregon Supreme Court's holding in

*Multnomah County v. Oregon Auto. Ins. Co.,* 256 Or. 24 (1970).  In *Multnomah County,* a

---

[28] *See* PF&R at p. 10.

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

medical technician, who was not a licensed physician, failed to give a diabetic jail inmate insulin allegedly resulting in bodily injury.  As here, the county's liability policy contained a professional services exclusion barring coverage for injury "due to the rendering of or failure to render any professional service."  256 Or. at 27.  After the insurer denied coverage and the county paid a resulting judgment to the inmate, the county filed a lawsuit seeking to recover the amounts that it had paid to satisfy the judgment.  In an effort to avoid the professional services exclusion, the county argued that the "acts of a medical technician are those of a craftsman and not of a professional."  *Id.* at 27.  The Oregon Supreme Court rejected this argument, explaining that "[i]n determining whether a particular act or omission is of a professional nature, the act or omission itself must be looked to and not the title or character of the party who performs or failed to perform the act."  *Id.*  Thus, the fact that the county employee was only a "medical technician" was not determinative.

Importantly, the Oregon Supreme Court did not address – one way or the other – whether the purpose or motivation for an act was relevant to the issue of whether the act was a professional service.  *See Hedmann v. Liberty Mut. Fire Ins. Co.,* 158 Or. App. 510 (1999) (the court expressly noted that the underlying claimant was not the doctor's patient and further the claimant did not allege that the doctor prescribed her Xanax in that capacity).  In fact, in *Multnomah County,* neither the purpose nor the motivation of the medical technician had any bearing on the exclusion's applicability.  Nevertheless, in *Am. Med. Response*, relying upon *Multnomah County,* the district court injected a purpose or motive component into the professional services exclusion that simply does not exist.  *See Am. Med. Resp. v. Ace Am. Inc. Co.,* 31 F. Supp.3d 1087, 1092 (D. Or. 2014) (holding that, under *Multnomah,*

Bullivant|Houser|Bailey PC

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

PLAINTIFF INSURERS' OBJECTIONS TO FINDINGS AND
RECOMMENDATION
Page 17

when determining the applicability of a professional services exclusion, a court examines the "nature of the services being performed" and sexual assault is not a service of a professional nature).  Similarly, here, the Magistrate erroneously injected Dr. Farley's purpose or motive to determine whether the alleged misconduct constitutes a professional service.

Here, indeed, Dr. Farley's alleged sexual abuse of the Underlying Coe Plaintiffs was masked by his ostensibly proper purpose in rendering various medical services and examinations to them.  Thus, like *Multnomah County,* Dr. Farley's alleged misconduct constitutes a professional service because the Underlying Coe Plaintiffs allege that his actions were derived out of his vocation as a physician.  Unlike *Hedmann,* the Underlying Coe Plaintiffs expressly allege that they were Dr. Farley's patients and that he abused them under the guise of providing medical treatment.  Thus, under established Oregon case law, Dr. Farley's actions constitute a professional service because the Underlying Coe Plaintiffs allege that Dr. Farley's alleged misconduct occurred during the course of their medical treatment.

## II.    The Magistrate Failed to Acknowledge that the Duty to Defend Applies Only to the Policies Implicated by the Allegations.

The Plaintiff Insurers do not dispute that, if only one of the Underlying Coe Plaintiffs allege "bodily injury" that falls outside the scope of the Professional Services Exclusions, then the Plaintiff Insurers have the duty to defend the Underlying Coe Lawsuit in its entirety. However, the Plaintiff Insurers' duty to defend is not unfettered, and all coverage – both defense and indemnity – is limited to only the policies triggered by the covered damages. *See Nw. Pump & Equip. Co. v. Am. States Ins. Co.*, 144 Or. App. 222, 227 (1996) ("[t]o allow coverage beyond those terms – for example, to require an insurer to cover a loss that is

Bullivant|Houser|Bailey PC

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**PLAINTIFF INSURERS' OBJECTIONS TO FINDINGS AND RECOMMENDATION**
**Page 18**

otherwise subject to an exclusion – would be to allow the insured to obtain more than it bargained for: coverage for a noncovered claim.").  As such, if the Court determines that, of the 114 Underlying Coe Plaintiffs, certain Underlying Coe Plaintiffs' allegations fall outside the scope of the Professional Services Exclusions, then the Plaintiff Insurers' duty to defend under the Primary Policies is only implicated by, and indemnification is only available under, the policies actually triggered by those particular allegations.

More specifically, the Magistrate found that "many of the minor Coe Plaintiffs allege that Dr. Farley subjected them to (largely ungloved) vaginal and/or breast 'exams' during routine 'sports physicals.'"[29]  Based upon an expert's testimony from a completely unrelated criminal case that neither West Linn nor the Underlying Coe Plaintiffs relied upon, or even referenced, the Magistrate concluded that there is no reason to conduct a vaginal or breast exam during a sports physical.[30]  As such, the Professional Services Exclusions could not apply to plaintiffs alleging sexual abuse during the course of sports physicals.  Again, as explained *supra*, this conclusion misses the point.  The Underlying Coe Plaintiffs – even those seeking sports physicals – believed that Dr. Farley's conduct was medically necessary and he never would have been able to perpetrate such alleged abuse if he was not acting

---

[29] PF&R at p. 9.

[30] *See* PF&R at p. 9 n.3 (analyzing expert testimony from *People v. Paupore,* 2010 WL 3184484, *2 (Mich. App. Aug. 12, 2010), *appeal denied,* 489 Mich. 895 (2011) where an expert testified at a criminal trial that the touching of female genitalia is unnecessary during sports physicals.).  As an initial matter, the *Paupore* decision is unpublished.  Under Michigan court rules, it is not favored to cite a Michigan court's unpublished decision and such a decision should only be cited if there is no other published authority on that point.  *See* Mich. Ct. R. 7.215.  As for the substance of the decision, the appellate court's discussion of this testimony was in the context of the defendant arguing on appeal that the trial court erred in admitting testimony that the defendant doctor had engaged in sexual misconduct with other patients.

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**PLAINTIFF INSURERS' OBJECTIONS TO FINDINGS AND RECOMMENDATION
Page 19**

under the guise of a trusted professional with the accompanying air of legitimacy that the guise provided.  That said, even if the Magistrate is correct that alleged sexual misconduct occurring during a sports physical falls outside the scope of the Professional Services Exclusions, only the Primary Policies in effect on the date(s) when the twelve (12) Coe Plaintiffs who allege abuse during sports physicals[31] would be implicated.

Without such a result, West Linn gets more than it bargained for, contrary to settled law and the terms of the Policies. Accordingly, the Plaintiff Insurers object to the Magistrate's PF&R to the extent it grants an unfettered duty to defend the Underlying Coe Lawsuit under the Primary Policies without first determining which claims are potentially covered.

## **CONCLUSION**

For the foregoing reasons, both the Primary Policies and the Umbrella Policies bar coverage for "bodily injury" due to the rendering of professional services and, specifically, any medical, health or therapeutic treatment, advice or instruction.  Based upon the allegations in the Underlying Lawsuits and, in the Underlying Coe Lawsuit specifically, the Underlying Plaintiffs allege that they were sexually abused while receiving medical care and treatment from Dr. Farley.  The Underlying Coe Plaintiffs further allege that Dr. Farley used the "guise of medical care and treatment" to sexually assault them.  Accordingly, because the Underlying Plaintiffs' alleged "bodily injury" – their alleged sexual abuse – was due to the rendering of Dr. Farley's professional services, the Professional Services Exclusions are

---

[31] Plaintiffs Jane Poe, A.C., B.C., B.U. C.C., C.J., C.N., C.O., D.B., D.E., D.O., and D.S. allege to have received sports physicals from Dr. Farley.  *See* First Amended DJ Complaint at ¶¶ 43, 59, 136, 184, 208, 228, 239, 243, 281, 291, 318, 327.

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**PLAINTIFF INSURERS' OBJECTIONS TO FINDINGS AND
RECOMMENDATION
Page 20**

applicable to the Underlying Lawsuits.  As a result, the Plaintiff Insurers do not have a duty

to defend or indemnify West Linn against the Underlying Lawsuits.  To the extent this

Courts hold that the Professional Service Exclusions do not apply to all of the Underlying

Coe Plaintiffs' allegations, then the Plaintiff Insurers only have a duty to defend the

Underlying Coe Lawsuit under the specific Primary Policies triggered by those allegations.

DATED:  August 1, 2022

BULLIVANT HOUSER BAILEY PC

By  *s/ John A. Bennett*
**John A. Bennett, OSB #750407**
E-mail:   john.bennett@bullivant.com
Telephone: 503.228.6351

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
AND POPEO, P.C.
**Nancy D. Adams**, (*pro hac vice*)
E-mail:   nadams@mintz.com
**Alec Zadek**, (*pro hac vice*)
E-mail:   azadek@mintz.com
Telephone: 617.542.6000

Attorneys for Plaintiffs American Economy
Insurance Company, American Fire and
Casualty Company, American States
Insurance Company, and the Ohio Casualty
Insurance Company

4876-1653-8924.2 03387/00747

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**PLAINTIFF INSURERS' OBJECTIONS TO FINDINGS AND
RECOMMENDATION
Page 21**