**Paul Bierly, OSB #950548**
PaulBierly@MarkowitzHerbold.com
**Jeffrey M. Edelson, OSB #880470**
JeffEdelson@MarkowitzHerbold.com
**Erin N. Dawson, OSB #116334**
ErinDawson@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR 97201
Tele: (503) 295-3085
Fax: (503) 323-9105

    Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| AMERICAN ECONOMY INSURANCE COMPANY; AMERICAN FIRE and CASUALTY COMPANY; AMERICAN STATES INSURANCE COMPANY; and THE OHIO CASUALTY INSURANCE COMPANY, | Case No. 3:22-cv-00019-JR<br><br>**DEFENDANT'S OBJECTIONS TO FINDINGS AND RECOMMENDATION** |
| Plaintiffs, | Oral Argument Requested |
| v. | |
| WEST LINN FAMILY HEALTH CENTER, PC, | |
| Defendant. | |

**OVERVIEW**

This insurance coverage case addresses whether American Economy Insurance Company, American Fire and Casualty Company, American States Insurance Company, and The Ohio Casualty Insurance Company (collectively, "the Plaintiff Insurers") are obligated to defend or indemnify West Linn Family Health Center, PC ("the Clinic") against three underlying lawsuits. Those lawsuits allege that the Clinic failed to take certain measures to prevent or

address alleged sexual abuse of patients by one of the Clinic's doctors ("Dr. Farley"). This case is not about whether the allegations in the underlying lawsuits are true. Rather, the question before this Court is whether the insurance policies issued by the Plaintiff Insurers to the Clinic provide coverage for those allegations.

The Plaintiff Insurers filed a Motion for Judgment on the Pleadings ("Motion") with respect to two exclusions contained in several of the insuring policies, namely, a Professional Services Exclusion and a Molestation Exclusion (together, "exclusions").[1] In their Motion, the Plaintiff Insurers argued that both exclusions operated to bar coverage of the claims in the underlying lawsuits. The Clinic disagreed and interpreted the exclusions in a manner that did not preclude coverage for at least some of the claims in the underlying lawsuits.

Magistrate Judge Jolie Russo issued her Findings and Recommendations on July 18, 2022 ("F&R") (Dkt. 37), which have been referred to this Court. The F&R both granted and denied portions of the Motion.

The F&R correctly concluded that coverage for the *Coe* and *Elliot* lawsuits is not barred by the Professional Services Exclusion and denied the Plaintiff Insurers' motion (in part) on that basis.[2] However, the F&R incorrectly concluded that (a) the Professional Services Exclusion bars coverage for the *Ewing* lawsuit, and (b) the Molestation Exclusion precludes coverage under the 2015-2017 policies for all of the underlying lawsuits.

## OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b)(2), the Clinic objects to the F&R's recommendation to grant, in part, the Plaintiff Insurers' Motion.

---

[1] A number of insurance policies issued by other insurers are relevant to the underlying lawsuits, however, the Clinic will only expressly address those policies implicated by these objections (referred to here as "Policies" unless described otherwise).

[2] References in these objections to the *Coe* complaint or lawsuit are intended to also include the *Elliott* complaint and lawsuit, which contain parallel claims for a failure to warn. (*See* 3/3/22 First Am. Compl. in *Elliott v. David Farley, M.D., et al.*, No. 22CV00749 ¶¶ 20-31, attached as Ex. 3B to Decl. of Paul Bierly in Support of Def.'s Mot. to Stay Proceedings, Dkt. 17.)

**Page 2 -  DEFENDANT'S OBJECTIONS TO FINDINGS AND RECOMMENDATION**

The Clinic objects as follows:

1. The F&R incorrectly concluded that the allegations in the underlying lawsuits relating to the Clinic's failure to warn the *Coe* Plaintiffs of Dr. Farley's alleged sexual abuse fall within the Molestation Exclusion, placing those allegations outside of the coverage provided by the Policies.

    a. The F&R's conclusion that the Molestation Exclusion's preambulatory term "arising out of" must be read broadly to give Paragraph 1 of the Exclusion a sweeping scope—thus rendering Paragraph 2 of the Exclusion mere surplusage— incorrectly ignores Oregon's framework of construing exclusions narrowly and in a manner that does not create superfluous terms or provisions.[3] *See Hoffman Constr. Co. v. Fred S. James & Co. of Or.*, 313 Or. 464, 471-72 (1992) (Oregon courts assume that the parties did not intend for a term or phrase to be redundant or meaningless). Instead, where the allegations underlying a claim of a negligent failure to warn do not flow from any alleged acts of sexual assault but from the Clinic's purported failure to warn the *Coe* Plaintiffs, they do not fairly "arise from" sexual assault. And to the extent that the Court could find each of the Parties' interpretations of the Molestation Exclusion, taken as a whole, to be plausible, Oregon law requires the Court to construe the provision in favor of the insured (here, the Clinic). *See Konell Constr. & Demolition Corp. v. Valiant Ins. Co.*, No. CV-03-412, 2006 WL 1360956, at *4 (D. Or. May 15, 2006) ("When the policy is reasonably susceptible to more than one interpretation . . . then it should be construed against the drafter."). The F&R did not do so.

    b. Despite the F&R's characterization of Paragraph 2 of the Molestation Exclusion as covering "any and all claims premised on respondeat superior and involving sexual abuse," Paragraph 2 does not apply to the failure to warn claims in the underlying

---

[3] The Molestation Exclusion in the American Fire and Casualty Company policies include sections (a) and (b). References to Paragraph 1 or Paragraph 2 throughout these objections will also, by incorporation, apply to and include the parallel sections (a) and (b) in the Molestation Exclusions in the American Fire and Casualty Company policies.

**Page 3 -   DEFENDANT'S OBJECTIONS TO FINDINGS AND RECOMMENDATION**

lawsuits. Those failure to warn claims are not part of the exclusive list in Paragraph 2 and they are also not premised on a theory of respondeat superior. Rather, they flow from the Clinic's purported special relationship with its patients and the alleged ensuing obligation to warn those patients of known risks of harm while under the Clinic's care. According to the logic in the *Coe* Complaint, that harm could come from the Clinic's employees or elsewhere; it is a risk inherent to providing medical care. Thus, to the extent that the F&R concluded that Paragraph 2 of the Molestation Exclusion is intended to reach claims premised on respondeat superior, the failure to warn falls outside that exclusion. The F&R incorrectly concluded to the contrary.

2. The F&R correctly concluded that the Professional Services Exclusion does not apply to the claims in the *Coe* Complaint. However, the F&R incorrectly concluded that the acts alleged in the *Ewing* Complaint fall within the Professional Services Exclusion because they do not "disavow a legitimate medical basis for Dr. Farley's physical examination." (F&R at 12.) To the contrary, although the Ewing Lawsuit asserts a claim for professional negligence, the alleged facts and claimed harm infer a potential sexual purpose. In fact, the F&R acknowledges that ungloved vaginal "exams" can constitute sexual abuse. In light of the *Ewing* Plaintiff's claims of "violation" and mental distress, it is plausible to conclude that the claimed injury could be characterized as abuse, and thus that it does not fall withing the exclusion for Professional Services.

## STATEMENT OF FACTS

The facts underlying the motion for judgment on the pleadings have been briefed in the Clinic's opposition to the Insurers' Motion for Judgment on the Pleadings (Dkt. 26), and the associated pleadings. For purposes of brevity, the Clinic incorporates the facts described there by reference. Certain specific facts are described below as needed.

## STANDARD OF REVIEW

Fed. R. Civ. P. 72 governs objections to F&Rs. Pursuant to Rule 72(b)(3), the district judge may make a *de novo* determination on any part of the magistrate judge's disposition that

has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions. In providing "for a 'de novo determination' rather than de novo hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations." *Brook as Tr. of David N. II Tr. v. McCormley*, 837 Fed. App'x 433, 435 (9th Cir. 2020), *cert. den sub nom. Brook v. McCormley*, 141 S. Ct. 2704 (2021).

## ANALYSIS

**I.  Under Oregon law, any ambiguity in the policies must be construed against the Plaintiff Insurers.**

Insurance contracts are contracts of adhesion, leaving the insured with no opportunity to negotiate terms. At best, an insured can hope for a policy with coverage and exclusions that are clear and understandable. Thus, insurance contracts in Oregon are interpreted from "the perspective of the 'ordinary purchaser of insurance.'" *North Pac. Ins. Co. v. Am. Mfrs. Mut. Ins. Co.*, 200 Or. App. 473, 478 (2005). As a result, undefined policy terms are generally given their ordinary and common meaning. *Mut. of Enumclaw Ins. Co. v. Rohde*, 170 Or. App. 574, 579 (2000); *Chale v. Allstate Life Ins. Co.*, 353 F.3d 742, 746 (9th Cir. 2003) (when insurer chooses not to define a term, it "must accept the common understanding of the term by the ordinary member of the purchasing public." (applying Oregon law)). And it is the insurer who bears the burden to prove the application of a coverage exclusion. *ZRZ Realty Co. v. Beneficial Fire & Cas. Ins. Co.*, 349 Or. 117, 129 (2010), *adh'd to as modified on recons*, 349 Or. 657 (2011); *Smith v. Indus. Hosp. Ass'n*, 194 Or. 525, 536 (1952).

Nevertheless, parties and courts often face policy terms or provisions that can be read in multiple, differing ways. When attempting to understand whether the meaning of a term or provision is susceptible to more than one interpretation, Oregon courts first determine whether the competing interpretations are plausible when viewed in light of the immediate context of the policy language and in the broad context of the policy as a whole. *Hoffman Constr. Co.*, 313 Or. at 470-71. However, a proposed interpretation of a policy term or phrase that may be plausible

in isolation is not reasonable if it would render another term redundant or meaningless. *Id*. at 471.

After this textual/contextual analysis, if both interpretations continue to be reasonable, the Court must conclude that the provision is ambiguous, and it and must then construe the provision in favor of coverage for the insured. *Id.* at 470-471. Thus, "[i]f the insured offers a [] plausible and reasonable interpretation of the insurance policy, that interpretation governs regardless of whether the insurer offers a different interpretation that is also plausible and reasonable." *Alkemade v. Quanta Indem. Co.*, 687 Fed. Appx. 649, 651 (9th Cir. 2017) (applying Oregon law).

The Court may not pick its favorite interpretation—it should only determine whether both interpretations are plausible. If they are, the insured's interpretation prevails. *Konell Constr. & Demolition Corp.*, 2006 WL 1360956, at *4 (cautioning that the Court's task is "not to choose the better of two interpretations" because "[w]hen the policy is reasonably susceptible to more than one interpretation . . . then it should be construed against the drafter."). This makes sense because it is the insurer who unilaterally prepares the policy; thus it should be the insurer who bears the burden of unclear draftsmanship. *See N. Pac. Ins. Co. v. Hamilton*, 332 Or. 20, 26, 29 (2001). ("It is the insurers' burden to draft exclusions and limitations that are clear" and "the court does not permit the party who drafted the term or phrase to benefit from the obscurity.").

Properly using this framework, the F&R should have concluded that the exclusions are, at most, ambiguous. Because an ambiguous exclusion must be construed against the Plaintiff Insureds and in favor of the Clinic, the F&R should have denied the Motion for Judgment on the Pleadings as to the Molestation Exclusion.

**II.   The Clinic's interpretation of the Molestation Exclusion is plausible, thus, at a minimum, the exclusion is ambiguous and must be construed in favor of the Clinic to find a duty to defend.**

The Molestation Exclusion in the 2015, 2016, and 2017 policies should be interpreted to permit coverage of certain claims in the underlying complaint. Because coverage on any claim

gives rise to a duty to defend, the Court should deny the Plaintiff Insurers' motion as to those exclusions.

For purposes of this analysis, the parties assumed that the allegations in the underlying state court complaints trigger the coverage clauses in each policy at issue. Thus, the question currently before the Court is whether the Molestation Exclusions in the 2015, 2016, and 2017 policies preclude coverage. To answer that question, the Court must look to the allegations contained in the underlying *Coe C*omplaint and the terms of the insurance policies. Nothing more is needed.

When considering an insurer's duty to defend, the Court must consider whether *any* allegations contained in the underlying complaint can plausibly be read to include an incident within the coverage of the policy. *Marleau v. Truck Ins. Exch.*, 333 Or. 82, 91 (2001). Where even one allegation, if later demonstrated to be true, could prove a claim that is covered by the policy, the insurer has a duty to defend. *W. Hills Dev. Co. v. Chartis Claims, Inc.*, 273 Or. App. 155, 162 (2015), *aff'd*, 360 Or. 650 (2016) ("[t]o trigger the duty to defend, a complaint needs only to make allegations with which a claim covered by the policy may be proven.").

Here, in relevant part, the *Coe* Complaint alleges that the Clinic elected to remain silent about Dr. Farley's alleged abuse when it had an obligation to warn the Coe Plaintiffs—due to an alleged special relationship between the Clinic and its patients—of the risks posed by Dr. Farley. (*See* First Am. Compl., Ex. A, *Coe et al. v. Farley et al*, No. 20CV37412, 8/3/2021 Third Am. Compl. ("*Coe* Complaint" or "*Coe* Compl.") ¶¶ 399, 406-421, Dkt. 10-1.)

As explained in the Clinic's Opposition to the Motion for Judgment on the Pleadings, the *Coe* Complaint raises multiple claims premised on this alleged failure, including one sounding in negligence. (*Id.* ¶¶ 406-426 (Claim Four); *id.* ¶¶ 396-405 (Claim Three).) Notably, the failure to warn the patients, as alleged in the *Coe* Complaint, is separate from the Clinic's alleged failure to investigate, supervise, or fire Dr. Farley, or to report Dr. Farley to authorities.[4]

---

[4] Some allegations in the *Coe* Complaint may sound like simply poor medical care. The Clinic's malpractice carrier is also participating in the defense of the Coe case, and nothing in

Here, the Molestation Exclusion in the Umbrella policies (2015, 2016) excludes coverage for:

> "Any liability for or arising out of:
>
> "1. [T]he actual, threatened, or alleged abuse, molestation, harassment or sexual conduct by anyone of any person; or
>
> "2. [T]he negligent:
> "a. employment, b. investigation, c. supervision, d. reporting to the proper authorities, or failure to so report, e. retention, or f. referral of a person for whom any 'Insured' is or ever was legally responsible and whose conduct would be excluded by 1. Above."

(First Am. Compl. ¶ 70, Dkt. 10; *id*. Ex. G at 20,46, Dkt. 10-7.)

Similarly, the American Fire policies (2015, 2016, 2017) containes the following Molestation Exclusion:

> "This insurance does not apply to 'bodily injury," . . . arising out of:
>
> "(a) The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured;
>
> "(b) The negligent: (i) Employment; (ii) Investigation; (iii) Supervision; (iv) Reporting to proper authorities, or failure to so report; or (v) Retention; of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by (a) above."

(First Am. Compl. ¶ 51.)[5]

---

these objections should be considered a concession that the malpractice carrier does not owe a defense.

[5] The 2017 Umbrella Policy contains a similar but slightly modified Molestation Exclusion:

> "Any liability, damages, loss, injury, demand, 'claim' or 'suit' arising out of, caused by, or allegedly caused by, in whole or in part by:
>
> "1. The actual, threatened, or alleged abuse or molestation of any kind or 'sexual misconduct'; or
>
> "2. Any allegation relating thereto that are based on an alleged practice, custom or policy, including but not limited to any allegation that a person's civil rights have been violated.

The parties, and later the F&R, have focused on the preambulatory term "arising out of." That phrase is not defined in the policies, and when insurer leaves a term undefined, it "must accept the common understanding of the term by the ordinary member of the purchasing public." *Chale*, 353 F.3d at 746. *Mut. of Enumclaw Ins. Co*, 170 Or. App. at 579. As relevant here, Webster's Dictionary defines "arising" as "originat[ing] from a specified source" or "to come into being" or "to come about." (*Webster's Third New Int'l Dictionary* 117 (unabridged ed. 2002).)

After reviewing the "arising out of" text and considering the relevant context of both paragraphs of the Molestation Exclusion, the F&R concluded that the two paragraphs contained in the exclusion are separate, noting, "the first paragraph of the Molestation Exclusions excludes coverage for sexual abuse, and the second paragraph clarifies that any and all claims premised on respondeat superior and involving sexual abuse fall outside the applicable Policies." (F&R at 13-14.) The Clinic agrees with that summary to the extent it suggests that the two paragraphs in the Molestation Exclusion cover two distinct types of harm: the abuse itself and employer liability for certain types of negligent actions relating to the abuse.

But the Clinic does not agree with the F&R's conclusion that the "Molestation Exclusions are clear that there is no coverage for [the Clinic]'s negligence emanating from or associated with Dr. Farley's sexual abuse of patients." (*Id.* at 13.) That conclusion is incorrect because, as explained further below, the *Coe* Plaintiffs' claims for a negligent failure to warn or educate plaintiffs does not "arise out of" either of the two provisions in the Molestation

---

"This exclusion applies even if the 'claim' against any 'Insured' alleges negligence or other wrongdoing in the supervision, hiring, employment, retention, referral, training, monitoring, investigation, supervision, or reporting to proper authorities, or failure to so report, of a person whose conduct would be excluded by 1. Above."

(First Am. Compl. ¶ 71.)

Despite any modest textual differences between the 2017 and 2015-2016 Molestation Exclusions, the appropriate discussion of how to interpret the exclusion is generally the same. The 2017 exclusion is ambiguous for the reasons laid out in these objections relating to the 2015-2016 exclusions.

Exclusion. The F&R's conclusion that there is no policy coverage for those claims cannot be squared with Oregon's principles of insurance contract interpretation.

> A. **The F&R incorrectly interpreted the Molestation Exclusion to conclude that the negligent failure to warn or educate patients about allegedly known risks "arises out of" the acts mentioned in Paragraph 1 of the Molestation Exclusion.**

At bottom, the F&R incorrectly concludes that the "Molestation Exclusions were intended to bar all claims premised on sexual abuse." (*Id.* at 15.) The F&R reaches that conclusion despite the presence of two paragraphs in the Exclusion, which the F&R acknowledges are aimed at two different types of acts. (*Id.* at 13-14 (describing the first paragraph as excluding "coverage for sexual abuse," while "the second paragraph clarifies that any and all claims premised on respondeat superior and involving sexual abuse fall outside the applicable Policies.").) To get there, the F&R cites and quotes from an out-of-state opinion addressing a virtually identical provision—but that opinion bluntly states: "Paragraph 2 is arguably redundant because the claims excluded by Paragraph 2 are also excluded by Paragraph 1 [but even if redundant] they do not produce conflicting results in this or any other conceivable circumstance." (*Id.* at 15-16 (citing and quoting from *Allstate Ins. Co. v. Florio*, 2020 WL 4529618, *5-6 (N.D. Ga. Jan. 23, 2020).)

In other words, courts reaching the same conclusion as the F&R have readily acknowledged that in doing so, they are reading one of the provisions out of the exclusion as redundant. That is not the Oregon method of contract interpretation. Instead, Oregon courts must construe a contract—here, an insurance policy—to give effect to all parts if it is possible to do so and still avoid absurd results. *See Williams v. RJ Reynolds Tobacco Co.*, 351 Or. 368, 379 (2011) ("[t]he court must, if possible, construe the contract so as to give effect to all of its provisions"); *Ruede v. City of Florence*, 231 Or. App. 435, 443 (2009) (declining to adopt an interpretation that render policy definitions meaningless surplusage). Here, it is possible to give effect to both Paragraph 1 and Paragraph 2 in the Molestation Exclusion without rendering Paragraph 2 redundant.

Page 10 - DEFENDANT'S OBJECTIONS TO FINDINGS AND RECOMMENDATION

By construing the phrase "arising out of" to mean directly resulting from the stated action, Paragraphs 1 and 2 do not overlap with one another; instead, they create an exclusion for two different types of acts: (1) the abuse itself, and (2) the negligence of an employer relating to the abuse. *See Shadbolt v. Farmers Ins. Exchange*, 275 Or. 407, 410-11 (1976) (noting that terms "of a general nature" may be ambiguous when used in an insurance policy "when they could reasonably be given a broader or a narrower meaning, depending upon the intention of the parties in the context in which such words are used by them"). Yet, the F&R states that reading the two provisions as separate and complimentary would "render other language within the Policies meaningless – namely, that which broadly excludes coverage for claims emanating from 'abuse or molestation' itself, and any 'negligence' associated with the 'employment' or 'retention' of the person who committed the 'abuse or molestation.'" (F&R at 15.) But the conclusion stated in the F&R does not follow from the text of the Molestation Exclusion.

Again, the Molestation Exclusion in the Umbrella policies (2015, 2016) reads as follows:

"Any liability for or arising out of:

"1. [T]he actual, threatened, or alleged abuse, molestation, harassment or sexual conduct by anyone of any person; or

"2. [T]he negligent:
"a. employment, b. investigation, c. supervision, d. reporting to the proper authorities, or failure to so report, e. retention, or f. referral of a person for whom any 'Insured' is or ever was legally responsible and whose conduct would be excluded by 1. Above."

(First Am. Compl. ¶ 70.)

If the last word of Paragraph 1 was "including," then interpreting Paragraph 2 as a subset or clarification of Paragraph 1 would follow. But the exclusion uses "or" (or in the case of the 2017 Umbrella Policy and the American Fire policies, nothing at all), which suggests that the two paragraphs are independent. In fact, "or" suggests that they are distinct and separate. *F.C.C. v. Pacifica Found.,* 438 U.S. 726, 740 (1978) (use of the disjunctive "or" indicates the items are separate.) Thus, reading the two paragraphs as distinct bases for exclusion by restraining the

"arising out of" to mean liability directly flowing from the stated action (rather than all liability that could conceivably be tied to the action) would give effect to both paragraphs. It is only the F&R's expansive interpretation of "arising out of" that would render Paragraph 2 meaningless—the plain text of the provision does not compel that conclusion. *See Rhiner v. Red Shield Ins. Co.*, 228 Or. App. 588, 593-94 (rejecting an interpretation of the term "furnished" because it rendered superfluous "the entire phrase 'a person furnished to you'").

Further, the average insured would not read a policy with two parts and assume that the second part is pointless, which is why courts give meaning to each and every part of the contract. *See Shadbolt*, 275 Or. at 411 (concluding that "an insurance policy should be construed according to its character and its beneficent purposes, and in the sense in which the insured had reason to suppose it was understood" (quotation marks and citation omitted)); *see also North Pac. Ins. Co.*, 200 Or. App. at 478 (noting that insurance policies are interpreted from "the perspective of the 'ordinary purchaser of insurance.'"). Instead, the insured would more likely try to determine the difference between the two paragraphs and would conclude that the first paragraph addresses harm resulting directly from the abuse whereas the second paragraph addresses harm resulting from an employer's failure to take the enumerated employer-related actions.

The F&R goes on to erroneously conclude: "In sum, the Molestation Exclusions are unambiguous: if the bodily injury results from any insured's sexual abuse, then [] there is no coverage." (F&R at 16.) But the F&R's conclusion seems to apply to facts not before the Court—the *Coe* Plaintiffs do not argue that the Clinic engaged in sexual abuse, and Dr. Farley is not an insured. Coverage is sought only for the negligent acts alleged against the Clinic. Because Paragraph 1 must be harmonized with Paragraph 2 in order to avoid rendering Paragraph 2 duplicative, "arising out of" must necessarily be constrained to liability directly flowing from the prohibited activities, not all liability that could conceivably exist in the same universe as a sexual abuse allegation. Thus, the negligent failure to warn claim does not fall within Paragraph 1 of the Molestation Exclusion. Coverage under the Policies is available for this claim.

**B. Paragraph 2 of the Molestation Exclusion does not apply—the *Coe* Complaint alleges a duty owed to the Plaintiffs based on the Clinic's purported special relationship with the Plaintiffs and not its employment of Dr. Farley.**

Because the F&R concluded that Paragraph 1 subsumed Paragraph 2, it did not analyze in detail the application of Paragraph 2 to the "failure to warn" claims. However, the F&R generally characterized Paragraph 2 as "clarify[ying] that any and all claims premised on respondeat superior and involving sexual abuse fall outside the applicable Policies." (*Id.* at 14.)

Here, Paragraph 2 does not apply to the negligent failure to warn for two reasons. First, because it is not listed as an enumerated action in Paragraph 2, which is a comprehensive list of the *respondeat superior* actions excluded from coverage under that provision. Second, even if the Court were to conclude that the list is not exclusive (it should not), Paragraph 2 still does not apply here because the *Coe* Complaint does not allege that the claim is premised on the Clinic's purported obligations as an employer but on its obligations to its patients as a medical provider. Specifically, the *Coe* Complaint alleges that "[b]y holding themselves out as qualified medical institutions, and by undertaking to provide medical care of the Plaintiffs and others, the [the Clinic] entered into a confidential, fiduciary, and special relationship with the Plaintiffs." *Coe* Compl. § 408. According to the *Coe* Complaint,

> "[The Clinic] had special duties to protect the Plaintiffs when their care, welfare, and physical custody were entrusted to [the Clinic's] care, which [the Clinic] voluntarily accepted. As such, [the Clinic] owed Plaintiffs a special duty of care that medical professionals dealing with vulnerable medical patients owe to protect them from harm. The duty to warn, educate, and protect arose from the special, trusting, confidential, and fiduciary relationships between [the Clinic] and Plaintiffs."

*Id*. at § 398.

Thus, according to the *Coe* Complaint, the Clinic was negligent in breaching the standard of care owed to the *Coe* Plaintiffs because of the relationship shared between the Clinic and the Plaintiffs, and not because the Clinic held an employer-employee relationship with the purported bad actor. In other words, the claims for a negligent failure to warn the *Coe* Plaintiffs are

grounded in the Clinic's alleged duties to the Plaintiffs as a medical care provider to "warn, educate, and protect" them, and not in any *respondeat superior* obligation. According to the *Coe* Plaintiffs' theory, the Clinic would have owed Plaintiffs the same duty of care to warn if the molestation threat came from a non-employee or from outside the clinic.

Because the negligent failure to warn is not listed in the exclusion and it is not of the type that the F&R concluded that Paragraph 2 sought to address (respondeat superior), it does not fall within the exclusion. Coverage under the Policies is available for this claim.

**III.     The duty to indemnify the Clinic cannot be determined yet.**

Under its Professional Services Exclusion analysis, the F&R correctly concluded that a decision on the Plaintiff Insurers' duty to indemnify under the policies *other than* the 2015-2017 Primary and Umbrella Policies would be premature. But because the F&R incorrectly concluded that the Molestation Exclusion barred coverage under the 2015-2017 Primary and Umbrella Policies, it did not reach the question of whether the Insurers have a duty to indemnify under those Policies. Because the Molestation Exclusion does not apply to prevent coverage under the 2015-2017 Primary and Umbrella Policies, a decision on the duty to indemnify under those Policies must be preserved for a date following final resolution of the lawsuits. The Court should expressly deny the Plaintiff Insurers' motion on the duty to indemnify.

**IV.     The F&R incorrectly concluded that the Professional Services Exclusion bars coverage of the claim in the *Ewing* Complaint.**

Under the Policies, the Professional Services Exclusion acts to exclude from coverage any bodily injury "caused by the rendering or failure to render any professional service." (First Am. Compl., Ex. D at 134, 192, Dkt. 10-4; *id.* Ex. E at 54, 129, Dkt. 10-5; *id.* Ex. G at 21, 47, Dkt. 10-7.)

The F&R concluded that the phrase "rendering [of] any professional service" included services that Dr. Farley was trained to, and could have, performed. (F&R at 9.) Nevertheless, the F&R declined to interpret the exclusion to bar coverage relating to allegations in the *Coe* and *Elliott* Complaints because "the Court need not define the precise confines of the term 'professional services,' as there is simply no set of circumstances where medically unnecessary

**Page 14 - DEFENDANT'S OBJECTIONS TO FINDINGS AND RECOMMENDATION**

fondling, groping, or digital penetration falls within the purview of the invoked exclusion." (*Id*. at 10.) The great weight of authority supported that interpretation. (*See id.* at 10-12 (collecting cases).)

Yet, despite that conclusion, the F&R determined that the Professional Services Exclusion bars coverage for the *Ewing* lawsuit because the alleged injury in *Ewing* "does appear to fall within the scope of Dr. Farley's gynecological practice, even if such services were not rendered in accordance with the community standard of care." *Id*. at 13. However, that conclusion overlooks the claimed injury in the *Ewing* Complaint; there, the Plaintiff alleged that due to Dr. Farley's ungloved vaginal exams, she felt "very violated" and "will require future medical care, including counselling services to treat her mental and emotion trauma" caused by Dr. Farley's actions. (*See* First Am. Compl., Ex. B, *Ewing v. West Linn Family Health Center*, No. 21CV40102, 12/6/2021 Third Am. Compl. ("*Ewing* Complaint" or "*Ewing* Compl.") ¶¶ 3, 7, Dkt. 10-3.) Notably, according to the Complaint, the *Ewing* Plaintiff did not seek the exams as medical care but was allegedly instructed to submit to the exam by Dr. Farley. (*Id*. ¶ 3.)

A sexual purpose is not expressly alleged in the *Ewing* Complaint; however, that may be because Plaintiff cannot know at this point in the underlying lawsuit what Dr. Farley subjectively intended. But it remains plausible to infer it from the circumstances alleged in the Complaint that Plaintiff felt abused or molested: (a) the Plaintiff did not seek the exam; and (b) she felt very violated and will require mental and emotional counseling to recover. Further, the F&R itself suggests that an ungloved vaginal exam could be an act of sexual gratification that does not qualify as a "professional service" under the Professional Services Exclusion. (*See* F&R at 10 (noting that allegations of "ungloved breast and vaginal 'exams,' among others, supported the conclusion that Dr. Farley acted with a sexual intent in the *Coe* lawsuit).)

Because coverage is determined based on the allegations in the Complaint, and it is plausible to interpret the allegations as inferring abuse or molestation, the Professional Services Exclusion should not apply to bar coverage for the *Ewing* lawsuit. *See Am. Med. Resp. Nw., Inc. v. ACE Am. Ins. Co.*, 31 F.Supp.3d 1087, 1092 (D. Or. 2014), *judgment entered*, No. 3:09-CV-

01196-JO, 2019 WL 5557240 (D. Or. Oct. 28, 2019) (concluding that the "alleged acts are determinative" rather than the status or location of the actor).

## CONCLUSION

The Clinic asks the Court to decline to adopt the portions of the F&R granting, in part, the Plaintiff Insurers' Motion for Judgment on the Pleadings. Instead, the Clinic respectfully urges the Court to deny the Motion for Judgment on the Pleadings in its entirety for the reasons cited in these objections.

DATED this 1st day of August, 2022.

MARKOWITZ HERBOLD PC

By: *s/ Paul S. Bierly*
Paul Bierly, OSB #950548
PaulBierly@MarkowitzHerbold.com
Jeffrey M. Edelson, OSB #880470
JeffEdelson@MarkowitzHerbold.com
Erin N. Dawson, OSB #116334
ErinDawson@MarkowitzHerbold.com
Attorneys for Defendant

1316098