**Paul Bierly, OSB #950548**
PaulBierly@MarkowitzHerbold.com
**Jeffrey M. Edelson, OSB #880470**
JeffEdelson@MarkowitzHerbold.com
**Erin N. Dawson, OSB #116334**
ErinDawson@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR 97201
Tele: (503) 295-3085
Fax: (503) 323-9105

    Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| AMERICAN ECONOMY INSURANCE COMPANY; AMERICAN FIRE and CASUALTY COMPANY; AMERICAN STATES INSURANCE COMPANY; and THE OHIO CASUALTY INSURANCE COMPANY, <br><br>     Plaintiffs, <br> v. <br><br> WEST LINN FAMILY HEALTH CENTER, PC, <br><br>     Defendant. | Case No. 3:22-cv-00019-JR <br><br> **DEFENDANT'S RESPONSE TO PLAINTIFF INSURERS' OBJECTIONS TO MAGISTRATE JUDGE JOLIE A. RUSSO'S FINDINGS AND RECOMMENDATION** <br><br> **Oral Argument Requested** |

## INTRODUCTION

American Economy Insurance Company, American Fire and Casualty Company, American States Insurance Company, and The Ohio Casualty Insurance Company (collectively, the "Plaintiff Insurers") have filed objections to portions of the Magistrate's Findings and Recommendations dated July 18, 2022 (Findings & Recommendations (Dkt. 36) ("F&R").)

**Page 1 -  DEFENDANT'S RESPONSE TO PLAINTIFF INSURERS' OBJECTIONS TO FINDINGS AND RECOMMENDATION**

In particular, the Plaintiff Insurers make the following four objections to the F&R:

1) the F&R failed to consider the Professional Services Exclusion's causal connection between the phrase "due to" or "caused by" and the phrase "professional services";

2) the F&R incorrectly concluded that the medical necessity of Dr. Farley's actions dictates whether he was providing a "professional service" for purposes of the Professional Services Exclusion;

3) the F&R incorrectly interpreted the Professional Services Exclusion to limit its application to only claims of medical malpractice; and

4) the F&R erroneously considered Farley's motivation when analyzing whether Farley performed a professional service.

West Linn Family Health Center, PC (the "Clinic") respectfully asks the Court to reject the above objections and affirm the F&R as to each of these issues.

The Plaintiff Insurers also raise a new argument that their duty to defend is limited to only those allegations that this Court concludes are covered by the subject policies. That argument was not raised before the Magistrate and it is not addressed by the F&R. This Court should decline to exercise its discretion to address it here. However, to the extent the Court decides to address the issue, the Clinic asks the Court to reject the argument as contrary to Oregon law.

**ARGUMENT**

I. **Oregon rules of policy interpretation support the F&R's conclusions regarding the professional services exclusion.**

The "contracting" process within the insurance world strongly favors the insurer. For example, an insurance policy is drafted solely by the insurer. It is provided to the insured only after the insured has paid the premium and the deal has been struck. Most are dense, often labyrinthian insurance contracts that few insureds, even sophisticated ones, fully understand.

In acknowledgment of that contracting imbalance, Oregon courts liberally construe the general grant of coverage. And courts apply an exclusion—which acts to erode that generous

grant of coverage—only when it is clear from the perspective of the ordinary purchaser of insurance that the insurer's interpretation of that exclusion is the *only* plausible interpretation. *See Bresee Homes, Inc. v. Farmers Ins. Exch.*, 353 Or. 112, 122 (2012) (policy coverage is liberally construed and exclusions are narrowing applied); *see also North Pac. Ins. Co. v. Am. Mfrs. Mut. Ins. Co.*, 200 Or. App. 473, 478 (2005) (insurance policy is construed from the perspective of an "ordinary purchaser of insurance"); *Chale v. Allstate Life Ins. Co.*, 353 F.3d 742, 746 (9th Cir. 2003) (when insurer does not define a term, it "must accept the common understanding of the term by the ordinary member of the purchasing public")

Thus, when the Plaintiff Insurers argue in their objections to the F&R that the Magistrate erroneously interpreted the professional services exclusion, they must show that their interpretation is the <u>only plausible one</u>. *Hoffman Constr. Co. v. Fred S. James & Co. of Or.*, 313 Or. 464, 470-71 (1992) (where, in light of text and context, multiple plausible policy interpretations can exist, the Court must construe the policy language in favor of coverage); *Alkemade v. Quanta Indem. Co.*, 687 Fed. Appx. 649, 651 (9th Cir. 2017) (applying Oregon law).

In other words, the Plaintiff Insurers must show not that the Magistrate selected the worst of two reasonable interpretations, but that the Magistrate reached a completely unreasonable and implausible conclusion. *Konell Constr. & Demolition Corp. v. Valiant Ins. Co.*, No. CV-03-412, 2006 WL 1360956, at *4 (D. Or. May 15, 2006) ("[T]his court's task, under governing law, is not to choose the better of two interpretations. When the policy is reasonably susceptible to more than one interpretation . . . then it should be construed against the drafter.") The Plaintiff Insurers do not come close to meeting that burden with their objections.

Further, an insurer's duty to defend is triggered whenever the underlying complaint makes *any* allegations that could, if proved, support a claim covered by the policy. *W. Hills Dev. Co. v. Chartis Claims, Inc.*, 273 Or. App. 155, 162 (2015), *aff'd* 360 Or. 650 (2016). Thus, to pull a covered claim into a policy exclusion and out of coverage, the Plaintiff Insurers must prove that the exclusion applies to every allegation. *Employers Ins. of Wausau , A Mutual Co. v.*

*Tektronix, Inc.*, 211 Or. App. 485, 509 (2007) (concluding that the "insurer has the burden of proving that the policy excludes coverage").

When considered in light of Oregon's interpretive framework and the burdens Oregon law deliberately and fairly places on the Plaintiff Insurers, it is clear that the F&R is correct on the issues objected to by the Plaintiff Insurers. The Court should adopt the F&R on the issues raised in the Plaintiff Insurers' objections.

**II.     The Magistrate correctly concluded that the professional services exclusion does not apply.**

As explained in the Clinic's Opposition to the Plaintiff Insurers' Motion for Judgment on the Pleadings, the Plaintiff Insurers do not disagree that the allegations in the underlying complaints constitute "bodily injury" under the policies, and thus that coverage clause of the policies are satisfied. (Def.'s Opp. to Pls.' Mot. for J. on the Pleadings (Dkt 26) at 6-11; Pls.' Mot. for J. on the Pleadings (Dkt. 22) at 9 ("[F]or purposes of the Motion, the Plaintiff Insurers presume that the Underlying Plaintiffs' alleged sexual abuse constitutes 'bodily injury' under the Primary Policies.").

Thus, unless the professional services exclusion in the policies at issue precludes coverage as to every allegation, the Plaintiff Insurers owe the Clinic a duty to defend in the underlying actions. The F&R correctly determined that the professional services exclusion does not apply and a duty to defend is owed. The Plaintiff Insurers' objections provide no plausible argument—much less the *only* plausible argument—to disturb those F&R.

**A.     The F&R correctly concluded that the professional services exclusion in the policies does not apply to the underlying allegations in the *Coe* and *Elliott* complaints.**

The primary policies for 1999-2002 contain the following professional services exclusion that bars coverage for:

> "Bodily injury," "property damage," "personal injury" or "advertising injury" due to rendering or failure to render any professional service. This includes but is not limited to:
>
> . . .

<mark>

> (4) Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;
>
> (5) Any health or therapeutic service treatment, advice or instruction[.]

(First Am. Compl. (Dkt. 10) ¶ 48 and Ex. D at 11, 32, 55, and 80.)

From 2003 through 2014, the primary policies contained the same exclusion but the words "due to" in the earlier exclusion were replaced by the words "caused by." (*Id.* ¶ 49 and Ex. D at 134, 192, 247, 305, 362-63, 427-28, 459-60, 523-24, 590-91, 657-58, 724-25, and 793-94.) The two versions of this exclusion in these policies are functionally identical.

The F&R concluded that the professional services exclusion does not apply to the *Coe* and *Elliott* lawsuits because it interpreted the plain meaning of the term "professional services," which is undefined by the policies, as "those services that fall within the scope of Dr. Farley's medical practice, and for which Dr. Farley was trained and licensed to perform." (F&R at 8.) Thus, the professional services exclusion would bar coverage only for injuries "generated by medical care furnished by Dr. Farley in his professional capacity as a doctor." (*Id*. at 8-9.)

In their objections, the Plaintiff Insurers argue against the F&R in four ways:

1) the F&R failed to consider the Professional Services Exclusion's causal connection between the phrase "due to" or "caused by" and the phrase "professional services";

2) the F&R incorrectly concluded that the medical necessity of Farley's actions dictates whether he was providing a "professional service" for purposes of the exclusion;

3) the F&R incorrectly interpreted the Professional Services Exclusion to limit its application to only claims of medical malpractice; and

4) the F&R erroneously considered Farley's motivation when analyzing whether Farley performed a professional service.

(Pl. Insurers' Obj. to F&R (Dkt. 38) ("Insurers' Obj.") at 8-18.)

As discussed below, the Plaintiff Insurers' objections are not well founded. The F&R correctly analyzed the professional services exclusion and determined that it did not preclude coverage for the underlying allegations in the *Coe*[1] and *Elliott*[2] complaints.[3]

> 1. **The F&R correctly defined "professional services" and did not fail to consider the policy exclusion's causal connection between the phrase "due to" or "caused by" and the phrase "professional services."**

In their first objection, the Plaintiff Insurers argue that the F&R "failed to give meaning to the phrases 'due to' and 'caused by' in the exclusions[,]" and in doing so, erroneously narrowed the plain meaning of the exclusion to bar coverage only "for" professional services. (Insurers' Obj. at 8-9.) The Plaintiff Insurers do not claim that sexual assault should be considered a "professional service." Instead, they claim that Dr. Farley "used the guise of medical care and treatment to normalize intimate, inappropriate, and sexually abusive contact." (*Id*. at 8.) Thus, the *Coe* Plaintiffs' alleged injuries were "due to" or "caused by" Dr. Farley's rendering of a professional service and are barred by the exclusion. (*Id*.)

Yet, the Plaintiff Insurers offer no definition—dictionary or otherwise—of the phrases "due to" or "caused by," nor do they point to any context or, really, *any* authority in support of their general conclusion that those phrases are the key to interpreting the exclusion. (*Id.* at 8-9.) Without a meaningful explanation of their argument, this Court should not craft one for them.

Further, the issue is not, as the Plaintiff Insurers argue, whether the F&R ignored the causal connection in "due to." Rather, the Plaintiff Insurers' position is that the trappings of medical care inherent in being a doctor rendered Dr. Farley's actions "professional services," no matter their actual nature. (*Id*. at 8.) Plaintiff Insurers raised the same argument before the Magistrate. (Insurers' Mot. for J. on the Pleadings at 24 ("The Underlying Plaintiffs further

---

[1] *See Coe et al. v. Farley et al.*, Multnomah County Circuit Court, No. 20CV37412, Third Am. Compl. (Aug. 3, 2021) attached as Ex. A to First Am. Compl., Dkt. 10-1.

[2] *See* 3/3/22 First Am. Compl. in *Elliott v. David Farley, M.D., et al.*, Clackamas County Circuit Court, No. 22CV00749, First. Am. Compl. (Mar. 3, 2022) attached as Ex. 3B to Decl. of Paul Bierly in Support of Def.'s Mot. to Stay Proceedings, Dkt. 17.)

[3] References in these objections to the *Coe* complaint or lawsuit are intended to also include the *Elliott* complaint and lawsuit, which contain parallel claims for a failure to warn.

allege that Dr. Farley used the 'guise of medical care and treatment' to sexually assault them" thus "their alleged sexual abuse [] was due to the rendering of Dr. Farley's professional services[.]") The F&R rejected the Plaintiff Insurers' argument because "[t]he fact that Dr. Farley effectuated these alleged misdeeds through, in the Insurers['] words, 'the guise of medical care and treatment' does not transform his acts into a service of the medical profession." (F&R at 10 (quoting Insurers' Mot. for J. on the Pleadings at 24).)

The F&R appropriately rejected the Plaintiff Insurers' argument that a medical exam can render a predatory sexual act a "professional service." To the extent Dr. Farley was, at times, rendering legitimate medical services, those services to a patient ended when any alleged molestation began. *See, e.g., Acinelli v. Torres*, No. ED-CV13-1371-AB(PLA), 2019 WL 6825767, at *4 (C.D. Cal. Apr. 22, 2019) (noting that courts nationally hold that a physician's sexual misconduct towards a patient "is not related to the provision of medical services"). To argue otherwise would ignore the obvious intent of the exclusion and logic itself.

Further, even if the Plaintiff Insurers' objection raised a plausible interpretation of the term "professional services" (it does not), the Court must find in favor of the Clinic's equally plausible argument as adopted by the F&R.

The Plaintiff Insurers have raised no new substantive arguments, analysis, or authorities that would disturb the F&R's correct conclusion that alleged sexual abuse is not and never can be a professional service. The exclusion does not apply to these claims.

> **2.    The F&R correctly concluded that sexual assault is not a professional service.**

In their second objection, the Plaintiff Insurers argue that the F&R misapprehended the relevant analysis for determining whether the professional services exclusion applies to the underlying claims. (Insurers' Obj. at 9-10.) According to the Plaintiff Insurers, the analysis does not require consideration of whether Dr. Farley's actions were medically necessary; rather, the analysis turns on the relationship between the alleged misconduct and the professional services provided by Dr. Farley. (*Id*. at 10.) Thus, the Plaintiff Insurers believe, because some of the underlying claims could be characterized as medical services and "it was during the course of

**Page 7 -    DEFENDANT'S RESPONSE TO PLAINTIFF INSURERS' OBJECTIONS TO FINDINGS AND RECOMMENDATION**

providing these medical services that the Underlying Coe Plaintiffs allege that they were sexually abused," the two were "linked," rendering the alleged abuse inseparable from the provision of medical care and subject to the exclusion. (*Id*. at 8-9, 13-14.)

The Plaintiff Insurers argument has at least three significant flaws. First, they incorrectly interpret the relevant Oregon case addressing the issue, *Am. Med. Response Nw., Inc. v. Ace Am. Ins. Co.* ("*AMR*"), 31 F. Supp. 3d 1087 (D. Or. 2014), *judgment entered,* 3:09-CV-01196-JO, 2019 WL 5557240 (D. Or. Oct. 28, 2019) in an effort to support their construction. Next, they rely almost exclusively on out-of-state case law when Oregon case law has squarely addressed this issue. And finally, the Plaintiff Insurers fail to perform the plain meaning analysis followed by Oregon courts when interpreting policy provisions.

As to *AMR*, the Plaintiff Insurers state: "In [*AMR*], the court held that an EMT's sexual assault of ambulance passengers did not result from the rendering of a professional service, because there was no connection between groping a passenger when the insured's duty is to transport the passenger to the hospital." (Insurers' Obj. at 9-10.) That is not what *AMR* held.

The *AMR* Court did not state, as the Plaintiff Insurers suggest, that its opinion relied on the lack of a connection between the abusive conduct and the EMT's duty of care at the time of the assault. Instead, the Court noted that the relevant analysis looks to the nature of the services being performed. 31 F. Supp. 3d at 1092. In *AMR*, the bad actor was a licensed medical professional ostensibly providing medical care to a patient at the time of the assault. *Id*. None of those facts mattered to the *AMR* Court. Plainly put, the Court concluded that "[s]exual assault is not the rendering of professional services." *Id*. The Court did not cabin that conclusion with statements about the relationship (or lack thereof) between the medical services, the bad actor *should* have been providing and the abuse. Instead, the Court expressly eschewed such an analysis: "[The bad actor's] acts are determinative, not his status as an EMT or the fact that he performed the acts in an ambulance." *Id*.

Thus, under *AMR*, which is persuasive legal authority in Oregon, sexual assault is not and can never be a "professional service." Period. The F&R reached that conclusion for the reasons cited in *AMR*. (F&R at 10-12.).

Next, the Plaintiff Insurers challenge the F&R's conclusion by pointing to cases outside of Oregon that parse the analysis in another manner. (Insurers' Obj. at 10-15.) But as noted in the Clinic's response to the Plaintiff Insurers' Motion, cases nationally on this issue overwhelming disfavor the "intertwined" and "inseparable" analysis proffered by the Plaintiff Insurers. (Def's Opp. to Mot. for J. on the Pleadings at 9-10 (noting that the cases holding that sexual molestation by a doctor was covered by a professional services insurance because the conduct was "intertwined with and inseparable from the services provided" have been "roundly criticized").) Courts nationwide have taken that view because logic compels it; adopting the Plaintiff Insurers' analysis would lead to the bizarre result where, based solely on their occupation, coverage is afforded to one type of professional but not to another.

Finally, the Plaintiff Insurers do not engage in a plain language analysis of the provision at issue—which is the one type of analysis that Oregon coverage cases universally endorse. Fortunately, Intervenor Defendants conducted just such an analysis in their response to the Plaintiff Insurers' Motion. (Intervenor Defs.' / Underlying *Coe* Plaintiffs' Resp. to Mot. for J. on the Pleadings (Dkt. 32) at 8-10.) After reviewing dictionary definitions of the exclusion's undefined terms, including "professional," "service," "render," and "cause," Intervenor Defendants logically concluded that the Professional Services Exclusion would apply only where his acts "were the results of [his] delivery of helpful acts conforming to the ethical standards of the medical profession, consistent with his education, training, and experience, and based on sound medical knowledge and conscientiousness." (*Id*. at 9.) That reasonable definition makes clear the absurdity of the conclusion the Plaintiff Insurers ask this Court to reach. As the F&R noted, "[t]he Court need not define the precise confines of the term 'professional services,' as there is simply no set of circumstances where medically unnecessary fondling, groping, or digital penetration falls within the purview of the invoked exclusion." (F&R at 10.)

Therefore, the relevant question is not whether, at some point, Dr. Farley provided professional services to the underlying plaintiffs. It is whether the acts that constitute the claims of abuse *are* those professional services. *AMR* has resoundingly said no—sexual abuse is not a professional service—and a plain language analysis of the exclusion supports that conclusion. 31 F. Supp. 3d at 1092. Put another way, it does not matter whether Dr. Farley might have been performing some legitimate medical service during some part of an exam—from the moment he began allegedly abusing a patient, he was no longer engaging in a professional service. The Court should reject the Plaintiff Insurers' arguments to the contrary.

### 3. The F&R did not conclude that only claims of medical malpractice would trigger the professional services exclusion.

The Plaintiff Insurers assert a third objection gleaned from a distinction the F&R makes between the allegations in the *Coe/Elliott* complaints and those in the *Ewing*[4] complaint:

> "Unlike in the Coe and Elliott Lawsuits, the Ewing Lawsuit does not disavow a legitimate medical basis for Dr. Farley's physical examination. Rather, the Ewing Lawsuit sounds in medical negligence, alleging that, during two of plaintiff's 'yearly PAP smears,' Dr. Farley failed to use gloves, which 'was not appropriate medical care.'"

(F&R at 12-13.)

Due solely to the F&R's use of the phrase "sounds in," the Plaintiff Insurers argue the F&R *must have* concluded that only acts of medical negligence could trigger the exclusion. (Insurers' Obj. at 15-16.) The Plaintiff Insurers suggest that the F&R's analysis of the *Ewing* complaint reveals that the F&R erroneously focused on legal theories in the underlying complaints rather than conduct. (*Id*. at 16 ("[R]eliance on the labels or legal theories in a complaint is not sufficient to determine the duty to defend. Rather, it is the 'conduct' alleged that is critical to the determination.").)

---

[4] *See Ewing v. West Linn Family Health Center*, Clackamas County Circuit Court, No. 21CV40102, Am. Compl. (Dec. 6, 2021) attached as Ex. B to Third Am. Compl., Dkt. 10-2.

*Coe et al. v. Farley et al.*, Multnomah County Circuit Court, No. 20CV37412, Third Am. Compl. (Aug. 3, 2021) attached as Ex. A to First Am. Compl., Dkt. 10-1.

The Plaintiff Insurers' analysis misreads the F&R on this issue. The F&R did not cite to the medical negligence claim pleaded in the Ewing complaint as the basis for concluding that the allegations in the complaint "sounded" in negligence; instead, based on some of the express allegations pleaded, the F&R concluded that the Ewing plaintiff's allegations implicated Dr. Farley as a medical practitioner rather than a sexual offender. (F&R at 12-13 (noting that the complaint alleged that Dr. Farley failed to use gloves during PAP smears). The F&R's analysis ultimately sought to determine whether Dr. Farley's actions were properly considered "professional services" under the exclusion.

According to the F&R, the injury alleged in *Ewing* "appear[ed] to fall within the scope of Dr. Farley's gynecological practice, even if such services were not rendered in accordance with the community standard of care." (*Id*. at 13.) Clearly, the F&R based its conclusions on at least some of the factual *allegations* pleaded in the Ewing complaint, and not in the claims pleaded.[5] The Plaintiff Insurers' suggestions that the F&R drew a bright line between medical negligence and everything else is incorrect, as is their concern for the proper focus of the F&R's analysis.

> **4.    The F&R did not erroneously considered Farley's motivation when analyzing whether Farley performed a professional service; but even if the F&R had done so, that would not be in error.**

The Plaintiff Insurers raise a final challenge to the F&R's analysis of the professional services exclusion, arguing that the F&R "erroneously deemed the purpose or motivation of Dr. Farley as being relevant to whether Dr. Farley was performing a professional service." (Insurers' Obj. at 16-18.) Oddly, the Plaintiff Insurers fail to point out precisely where in the F&R they feel the error lies. (*Id*. at 16 n.28 (citing only to "*See* PF&R at p. 10.").) That may be because the Plaintiff Insurers' arguments are designed to raise, once again, their position that actions taken by a physician are *always* professional services.

---

[5] The Clinic has filed Objections to the F&R's recommendations in the *Ewing* matter, noting that the allegations in the *Ewing* complaint could constitute sexual abuse. The Clinic does not waive those Objections through its arguments in this response.

Thus, at bottom, this objection is an attack on *AMR*, which the F&R cites in support of its definition of "professional services." Specifically, the Plaintiff Insurers assert that *AMR* wrongly "injected a purpose or motive component into the professional services exclusion that simply does not exist." (*Id*. at 17 (citing *AMR*, 31 F. Supp. 3d at 1092).) To get there, the Plaintiff Insurers focus on the explanation in *AMR* that a court should consider the "nature of the services being performed" when determining if they are professional services. But there is nothing remarkable about that proposition. In fact, it mirrors the analysis in the case relied on by the Plaintiff Insurers, *Multnomah Cnty. v. Oregon Auto. Ins. Co.*, 256 Or. 24 (1970).

In *Oregon Auto*, the Oregon Supreme Court explained that "[i]n determining whether a particular act or omission is of a professional nature, the act or omission itself must be looked to and not the title or character of the party who performs or failed to perform the act." *Id*. at 28. There is little, if nothing, more in *AMR*'s analysis than that endorsed by the *Oregon Auto* Court. Both courts would agree with the F&R that the correct analysis looks past the actor's role to the action itself. Again, for purposes of determining whether any specific act by Dr. Farley's constituted a professional service, the only thing that matters is whether at any given moment he was performing a legitimate medical service, or whether he was sexually abusing a patient. If the latter, the abuse was not a professional service, and the Professional Services Exclusion does not preclude coverage.

However, even if the F&R *did* rely on Dr. Farley's subjective intent to determine if his actions constituted sexual abuse, that would not be incorrect. Some acts in the underlying complaints could be poor medical care or, conversely, sexual abuse, depending on Dr. Farley's intent. For example, the F&R concluded that the allegations in the *Ewing* complaint merely implicated substandard medical care, not sexual abuse. (F&R at 12-13.) On the other hand, both the Clinic *and* the Plaintiff Insurers read the same *Ewing* complaint and concluded that it alleged sexual abuse. (*See* First Am. Compl. ¶ 28 ("Underlying Plaintiff Ewing alleges that, while seeking medical treatment from Dr. Farley on March 3, 2017 and March 27, 2019, she was sexually abused."); *see also* (Def.'s Obj. to F&R (Dkt. 39) at 15 (arguing that the *Ewing*

plaintiff's allegations of feeling "very violated" and requiring future counseling for "mental and emotional trauma" could give rise to an inference that Dr. Farley's actions were sexual abusive in nature).).

The differing views of the allegations in the *Ewing* complaint highlights the danger in trying to determine coverage at this stage when none of the facts in the underlying lawsuits have been established. However, when a complaint can be reasonably interpreted to include an incident within policy coverage, the insurers owe a duty to defend. Thus, regardless of whether Dr. Farley is ultimately convicted of any sexually predatory act, the allegations in each of the underlying complaints presently give rise to coverage under the policies. That is the interpretive standard accepted in Oregon.

The Court should reject, once again, the Plaintiff Insurers' additional attempt to pitch their definition of "professional services" to extend to all acts performed by a medical doctor.

**B.     If coverage exists for some of the allegations in the *Coe* complaint, the Plaintiff Insurers have a duty to defend the Clinic in the whole action.**

As a final matter, the Plaintiff Insurers argue that if the Court concludes that coverage extends to some, but not all, of the allegations in the *Coe* complaint, their duty to defend extends to only the covered allegations. This issue was not raised before the Magistrate, and it was not discussed in the F&R. Thus, this Court should decline to exercise its discretion to address it for the first time here. The Clinic asks the Court to reject the Plaintiff Insurers' argument on that basis.

Moreover, on the merits, the Plaintiff Insurers' position is wrong. Under Oregon law, where a complaint contains *any* covered allegation, a duty to defend exists and extends to the entirety of the action. *Rogowski v. Safeco Ins. Co. of Oregon*, 306 Or. App. 505, 511 (2020) ("if the complaint can reasonably be interpreted to allege any basis that would fall within the policy coverage, then the insurer owes a duty to defend") (citation omitted); *Abrams v. Gen. Star Indem. Co.*, 335 Or. 392, 400 (2003) (insurer has duty to defend where complaint's allegations implicate both covered and uncovered acts); *Timberline Equip. Co. Inc. v. St. Paul Fire & Marine Ins. Co.*, 281 Or. 639, 645 (1978) (insurer liable for entire defense costs even where

**Page 13 -  DEFENDANT'S RESPONSE TO PLAINTIFF INSURERS' OBJECTIONS TO FINDINGS AND RECOMMENDATION**

exclusion applied to some of the allegations in the complaint). Thus, to the extent coverage exists for some of the allegations in the *Coe* complaint, the Plaintiff Insurers must provide a defense to the Clinic as to the entire action.

## CONCLUSION

For all of the above reasons, the Court should adopt the Magistrate's Findings and Recommendations as to the portions raised in the Plaintiff Insurers' objections.

DATED this 15th day of August, 2022.

MARKOWITZ HERBOLD PC

By: *s/ Paul S. Bierly*
Paul Bierly, OSB #950548
PaulBierly@MarkowitzHerbold.com
Jeffrey M. Edelson, OSB #880470
JeffEdelson@MarkowitzHerbold.com
Erin N. Dawson, OSB #116334
ErinDawson@MarkowitzHerbold.com
Attorneys for Defendant

1320058